**ORNBERG, Plaintiff-Appellee**

v.

**ORNBERG, Defendant-Appellant**

No. 13,889

United States Court of Appeals

Third Circuit

Argued January 30, 1963
Decided March 7, 1963

*See, also, 314 F.2d 206*

G. H. T. DUDLEY, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for appellant*

WILLIAM W. BAILEY, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before MARIS, WOODBURY,[1] and HASTIE, *Circuit Judges*

WOODBURY, *Circuit Judge*

This is an appeal from a decree of the District Court of the Virgin Islands, Division of St. Thomas and St. John, granting the plaintiff-appellee an absolute divorce and from a subsequent order of the same court denying the defendant-appellant's motion for a new trial. The questions presented are whether the court below had jurisdiction and whether the defendant's evidence of the plaintiff's desertion and adultery established a valid defense.

The jurisdictional question was raised by motion to dismiss as well as by special defense. At the hearing on the motion in September 1961 the plaintiff, in response to questions by counsel for the defendant, testified that he left his business in Orlando, Florida, and came to St. Thomas "somewhere around the 10th of June" 1961 (his complaint for divorce was filed July 26, 1961) and that he lived in a one room apartment in St. Thomas. He also testified that he was the president of two companies doing business in Orlando, Florida, one an electrical contracting concern called Curry Electric Company, which paid him a salary of $227 per week, and the other called Safe Harbor, Incorporated, which operated a boat yard.

■ On objection, counsel for the defendant was prevented by the court from inquiring into the extent of the plaintiff's stock ownership in the corporations.[2] The ruling was correct. Stock ownership as such has no bearing on

[1] By Designation.

[2] Evidence of the stock holdings in the corporations was contained in a pre-trial deposition of the plaintiff introduced into evidence at the subsequent trial.

the residence or domicile (for present purposes the terms are synonymous, see Burch v. Burch, 2 V.I. 559, 195 F.2d 799, 804 (C.A.3, 1952)) of the stockholder. Management of a corporation is another matter. The extent to which a corporate officer claiming to be a resident of one jurisdiction actively manages the affairs of his corporation engaged in business elsewhere has bearing on the genuineness of the claim of residence. A claim of residence in the Virgin Islands by one retaining active management of a corporation doing business in Florida may well be looked at askance. But the court's exclusionary ruling covered only stock ownership. It did not prevent the defendant's counsel from inquiring into the extent to which the plaintiff governed the affairs of the Curry Electric Company while he was in the Virgin Islands. Indeed, counsel for the defendant asked the plaintiff who was running the Curry Electric Company in his absence, to which the plaintiff answered that his son was doing so as general manager. Had he wished, counsel for the defendant might have delved deeper into the extent of the plaintiff's participation in the affairs of the Curry Electric Company while he was in the Virgin Islands.

Counsel for the plaintiff waived cross-examination and then, in response to questions by the court, the plaintiff said that he came to the Virgin Islands intending to live there and to open a branch office of Curry Electric Company leaving his son to carry on the business in Florida "where it takes a younger man with competition as it is today," that for a month and a half or more he had been working for a local electric company in order to gain experience with the local building code and local conditions so that he might pass the examination required to obtain a license for Curry Electric Company to carry on its business in the Virgin Islands, and that he had no intention of coming to the Virgin Islands "just to get a divorce after six weeks' residence." In answer to a question by his own

counsel the plaintiff said that it was his intention to make the Virgin Islands his permanent home whether or not he got his divorce.

■ Of course the court below might have disbelieved the plaintiff's testimony. But the credibility of a witness is for the trial court, for it has the opportunity to see the witness and to hear him testify. We cannot say that the court's belief of the plaintiff's testimony is without rational basis. And on that testimony the court was warranted in denying the defendant's motion to dismiss for lack of jurisdiction.

At the trial on the merits in October 1961 there was introduced in evidence an item in a local newspaper of October 5, 1961, purporting to be based on an item published in an Orlando, Florida, newspaper quoting excerpts from a letter written by the plaintiff to the editor of the latter paper in which the plaintiff was quoted as saying critical things about Virgin Islands' prices and the industry and efficiency of its workers, as saying that he was homesick for Orlando and as saying that he had come to the Virgin Islands in June "figuring I would be here about six weeks" but that he was still there and it looked as though he would be there another month. Counsel for the defendant relies heavily upon this newspaper item to show the plaintiff's lack of genuine intention to make the Virgin Islands his home. The reference to an anticipated stay in the Islands of six weeks is indeed enough to arouse suspicion. But the suspicion is weakened by the plaintiff's explanation that the phrase quoted above was taken out of its context in his letter, and that, in context, the reference was to the time he anticipated it would take to negotiate a contract for the electrical work in a building to be constructed in Frederiksted, St. Croix. The letter itself is not in evidence. In its absence we cannot say that the plaintiff's explanation is unworthy of belief.

The only evidence offered by counsel for the defendant

in support of his post-decree motion for a new trial was an affidavit by one who said that she was acquainted with the plaintiff and: "He resided at 2 Trumpeter Gade, Charlotte Amalie, V. Is., a rooming house managed by me, from July 7 to October 26, 1961, when the said Mr. Ornberg departed for the United States." Had the plaintiff permanently left the Virgin Islands immediately after obtaining his divorce, doubt would be cast upon his assertion of domicile. But the affidavit does not aver permanent departure. It merely says that the plaintiff left the Virgin Islands for the United States. It is inadequate in that it does not state departure from the Virgin Islands with no intention of returning, if, indeed, the affiant could possibly have personal knowledge that such was the fact.

There is adequate factual basis for the court's assertion of jurisdiction.

■ The evidence falls short of conclusively establishing the plaintiff's desertion of his wife and his adultery.

The evidence is that the plaintiff and his wife finally separated in November 1954, the wife remaining in the home and the plaintiff going to live in a small house owned by Curry Electric Company. The plaintiff said that the separation was the result of years of friction. He said: "We constantly battled." And he said that his wife embarrassed him in public by making fun of him, that they were incompatible, and that "we also had considerable battles over sex," because his wife denied herself to him sexually. The defendant's contention, on the other hand, is that the plaintiff left her "to take up residence with a paramour." It is true that after the separation the plaintiff hired a woman to act as his housekeeper. And it is true that after the plaintiff separated from his wife he purchased a series of cabin cruisers on which he entertained prospective customers and that he took his housekeeper along on cruises, he said, as a servant to mix cocktails and otherwise wait upon his guests.

This evidence is enough to arouse suspicion. But housekeepers are not necessarily mistresses. In the absence of any evidence that the plaintiff and his housekeeper had been surprised in a compromising situation, the court could rationally believe the plaintiff's categorical testimony that he had not left home to live in adultery with his housekeeper. The evidence raises issues of fact. We cannot say the resolution of those issues by the court below was "clearly erronous."

Judgment will be entered affirming the decree of the District Court.